## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| ELECTRICAL WORKERS PENSION FUND, LOCAL 103, I.B.E.W., on behalf of itself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>SIX FLAGS ENTERTAINMENT CORPORATION, JAMES REID-ANDERSON, and MARSHALL BARBER,<br><br>        Defendants. | Civil Action No.<br><br><br>CLASS ACTION<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Electrical Workers Pension Fund, Local 103, I.B.E.W. ("Local 103" or "Plaintiff"), by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, *inter alia*, counsel's investigation, which included review and analysis of: (a) regulatory filings made by Six Flags Entertainment Corporation ("Six Flags" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) press releases, presentations, and media reports issued and disseminated by the Company; (c) analyst and media reports concerning Six Flags; and (d) other public information regarding the Company.

## INTRODUCTION

1.      This securities class action is brought on behalf of all persons or entities that purchased shares of Six Flags' common stock between April 25, 2018 and January 9, 2020,

inclusive (the "Class Period"). The claims asserted herein are alleged against Six Flags and certain of the Company's current and former senior executives (collectively, "Defendants"), and arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, promulgated thereunder.

2.      Headquartered in Grand Prairie, Texas, Six Flags is the largest regional theme park operator in the world, with 26 parks across North America. In addition to generating revenue by operating its parks throughout North America, Six Flags also earns revenue pursuant to international licensing agreements to assist third parties in the development and management of Six Flags-branded parks outside of North America. As compensation for exclusivity, brand licensing rights, and design, development and management services, the Company receives fees during the planning, design and development phase of each park and then would receive royalties and management fees once the park is operational.

3.      On June 23, 2014, Six Flags announced the signing of an agreement to build multiple Six Flags-branded theme parks in China. Six Flags partnered exclusively with Riverside Investment Group Co. Ltd. ("Riverside"), a Chinese real estate developer, that would provide the capital investment for future developments in China. The Company emphasized expansion of its international licensing agreements as one of its key strategies to achieve revenue growth, and Six Flags' agreements with Riverside to develop parks in China were of particular importance to investors because they represented the largest potential driver of growth in this strategic initiative.

4.      By May 29, 2018, Six Flags had announced plans with Riverside to develop 11 parks across three locations in China.

5.      Throughout the Class Period, Defendants made materially false and misleading statements, as well as failed to disclose material adverse facts, regarding the Company's business,

operations, and growth prospects. Specifically, Defendants touted its business relationship with Riverside as an "incredible partnership" that "should supercharge revenue growth." The Company also stated that Riverside would "work[] through" the macroeconomic issues that it faced in China and represented that delays in the development of its Six Flags-branded parks in China were "short-term" and the resulting weakened revenue patterns were "not material in the context of the long-term opportunity." These and similar statements during the Class Period were false and misleading because Defendants knew or recklessly disregarded that its licensing agreements with Riverside would not result in the benefits that Defendants had publicly represented. As a result of these misrepresentations, shares of Six Flags' common stock traded at artificially inflated prices during the Class Period.

6.      The truth began to emerge on February 14, 2019, when the Company surprised investors by announcing a negative revenue adjustment of $15 million in the fourth quarter of 2018 related to the Company's agreements with Riverside due to delays in the expected opening dates of some of the parks in China, which the Company blamed on macroeconomic issues in China. As a result, Six Flags reported a 38% decline in the Company's sponsorship, international agreements and accommodations revenue compared to the fourth quarter of 2017. Six Flags also told investors that it expected weaker than anticipated quarterly revenue from its agreements with Riverside in 2019 and 2020. In response to these disclosures, the Company's stock price dropped over 14%, from $63.87 per share to $54.87 per share, on high trading volume.

7.      On October 23, 2019, Six Flags again postponed the timing of its park openings in China, stating that "there's a very high likelihood going forward that we will see changes in the timing of park openings" and "it's unrealistic to think it's going to be exactly as we've outlined." As a result, the Company reported a 26% decline in sponsorship, international agreements and

accommodations revenue for the third quarter of 2019 compared to the third quarter of 2018.  In response to these disclosures, Six Flags' stock price fell from $51.23 per share to $44.88 per share, on high trading volume, a decline of more than 12%.

8.      Then, on January 10, 2020, before the market opened, the Company revealed that the future of its China projects was in jeopardy.  In particular, the Company announced that the development of the Six Flags-branded parks in China continued to encounter challenges and had not progressed as expected.  The Company also reported that Riverside continued to face significant challenges due to the macroeconomic environment and declining real estate market in China, which caused Riverside to default on its payment obligations to Six Flags.  Furthermore, the Company told investors that, in the fourth quarter of 2019, it would realize no revenue from its agreements with Riverside and expected a negative $1 million revenue adjustment related to those agreements.  The Company also announced one-time charges totaling approximately $10 million related to Riverside's default.  In response to these disclosures, Six Flags' stock price fell from $43.76 per share to $35.96 per share, or nearly 18%, on high trading volume.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.     Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Six Flags maintains its headquarters in Grand Prairie, Texas, which is situated in this District, conducts substantial business in this District, and many of the acts and conduct that constitute the violations of law complained of herein, including dissemination to the public of materially false and misleading information, occurred in and/or were

issued from this District.  In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

### A.   Plaintiff

11.     Plaintiff Local 103 is a pension fund based in Boston, Massachusetts that provides retirement benefits to active and retired Boston electrical workers.  As indicated on the certification submitted herewith, Local 103 purchased Six Flags common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

### B.   Defendants

12.     Defendant Six Flags is incorporated in Delaware, and maintains its corporate headquarters at 924 Avenue J East, Grand Prairie, Texas.  The Company's common stock trades on the New York Stock Exchange ("NYSE") under ticker symbol "SIX."  As of October 18, 2019, Six Flags had over 84 million shares of common stock outstanding, owned by hundreds or thousands of investors.

13.     Defendant James Reid-Anderson ("Anderson") served as Six Flags' Chairman, President and Chief Executive Officer ("CEO") from July 2017 until his retirement on November 18, 2019.  From February 2016 to July 2017 Defendant Anderson served as Executive Chairman of Six Flags and from August 2010 to February 2016 Defendant Anderson served as Chairman, President and Chief Executive Officer of Six Flags.

14.     Defendant Marshall Barber ("Barber") has served as Six Flags' Chief Financial Officer since February 2016.

15.     Defendants Anderson and Barber are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with Six Flags, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors.  Each of the Individual Defendants was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

## BACKGROUND

16.     Six Flags is the world's largest regional theme park operator, with more than two dozen parks across North America.  In addition to generating revenue through the operation of its parks in North America, Six Flags also earns revenue pursuant to international licensing agreements to assist third parties in the development and management of Six Flags-branded parks outside of North America.  Pursuant to these agreements, the Company receives fees during the planning, design and development phase of each park and then would receive royalties and management fees once the parks opened.

17.     In late June 2014, Six Flags announced the signing of an agreement with a Chinese real estate developer, Riverside, to build multiple Six Flags-branded theme parks in China.  Riverside would provide the capital investment for future developments in China and would pay Six Flags consulting fees during the development period of each park and then licensing and management fees once the parks opened.  While the Company did not disclose the detailed terms

of the arrangements for any of their international licensing agreements, Six Flags represented that each international park would contribute $5 million to $10 million annually to EBITDA pre-opening, and then $10 million to $20 million annually post-opening.

18. The Company emphasized the expansion of its international licensing agreements as one of its key strategies to achieve revenue growth, and Six Flags' agreements with Riverside to develop parks in China represented the largest potential driver of growth in this strategic initiative. For example, during the Company's first quarter 2018 earnings call on April 25, 2018, Six Flags' then-CEO, James Reid-Anderson, described the opportunity to expand the Company's international agreements revenue, stating "China is the biggest of all, and the vision of both Six Flags and Riverside is to build multiple parks."

## DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS CAUSE SUBSTANTIAL LOSSES TO INVESTORS

19. The Class Period begins on April 25, 2018, when Six Flags held its first quarter 2018 earnings call. During the call, in describing the deals with Riverside to build parks in China, Defendant Anderson stated that "we will not be stopping at 10 parks, I can assure you that, and our partner is very excited about being able to expand further with us." Defendant Anderson touted Six Flags' "incredible partnership with Riverside" and assured investors that Riverside "has not only successfully navigated the regulatory environment in China before but will continue to do so going forward." He also told investors that "all our parks are progressing nicely towards their anticipated opening dates. And, hence, we've announced 3 more parks. We're very confident."

20. On July 25, 2018, Six Flags held its second quarter 2018 earnings call. On that call, Defendant Anderson again emphasized the Company's international licensing agreements with Riverside to develop Six Flags-branded parks in China, stating "[o]ur international licensing program is growing exponentially and providing additional diversification to our portfolio, and the

opportunity for future growth remains very compelling." He also stated that "revenue from international licensing should accelerate further, as we continue to add new licensing arrangements and over the long-term begin opening parks." Defendant Anderson also stated that the Company's licensing agreements with Riverside "should super charge revenue growth" and touted Six Flags as "the ultimate growth and yield stock." During the call, Defendant Anderson also stated that "the timing of the parks remains exactly the same as previously disclosed."

21.    On October 24, 2018, Six Flags held its third quarter 2018 earnings call. During the call, Defendant Anderson described its anticipated Chinese parks as "an incredible lineup of new parks to come [with] a lot of revenue to come." Defendant Anderson also urged investors that "[t]his is [the] time to buy Six Flags shares."

22.    The statements set forth above in ¶¶ 19-21 were materially false and misleading because Defendants misrepresented and failed to disclose the following adverse facts about the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and misleading statements and/or failed to disclose that: (1) Riverside faced far more financial distress than disclosed to investors; (2) as a result, there was a high likelihood that Riverside would default on its payment obligations to the Company; (3) the Company's international strategy, which relied predominantly on its exclusive agreements with Riverside to develop Six Flags-branded parks in China to drive revenue growth, was significantly less promising than represented to investors; and (4) as a result of the foregoing, Defendants' statements about the Company's business, operations and prospects lacked a reasonable basis.

23.    On February 14, 2019, the Company surprised investors by announcing a revenue adjustment of $15 million in the fourth quarter of 2018 related to the Company's agreements with

Riverside due to delays in the expected opening dates of some of the parks in China, which the Company blamed on macroeconomic issues in China.  As a result, the Company reported a 38% decline in the its sponsorship, international agreements and accommodations revenue compared to the fourth quarter of 2017.  Six Flags also told investors that in addition to adjusting its revenue recognition to the newly expected project timelines, it expected weaker than anticipated quarterly revenue from its agreements with Riverside in 2019 and 2020.  In response to these disclosures, the Company's stock price dropped over 14%, from $63.87 per share to $54.87 per share, on high trading volume.

24.     Six Flags downplayed the significance of these disclosures and continued to misrepresent the prospects of the development of its branded parks in China.  In particular, during the Company's fourth quarter and full year earnings call on February 14, 2019, Defendant Anderson assured investors that "[a]lthough the timing of the ensuing revenue adjustments is unfortunate, our partner in China remains fully committed to developing and opening these parks, and construction is continuing" and Riverside is "work[ing] through these macroeconomic issues." In addition, in response to an analyst's question regarding the financial health of Riverside, Defendant Barber assured investors that Riverside "has a lot of assets" and is in "great shape" financially.

25.     Furthermore, on April 24, 2019, Six Flags held its first quarter 2019 earnings call. During the call, Defendant Anderson stated that "[w]e continue to work with our international partner in China, meeting government officials for each of our 3 park complexes, and we believe conditions in China have slowly begun to improve" and "we should not lose sight of the fact that these short-term delays and lumpy revenue patterns are not material in the context of the long-term opportunity."

26.     On May 22, 2019, Defendant Barber represented Six Flags during the B. Riley FBR Institutional Investor Conference.  During the call, Defendant Barber stated that "there's been struggles over the last 4 or 5 years that we've been working with [Riverside] that they've always managed to get through … [a]nd we're optimistic that he can get through this."

27.     The statements set forth above in ¶¶ 24-26 were materially false and misleading because Defendants misrepresented and failed to disclose the following adverse facts about the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them.  Specifically, Defendants made false and misleading statements and/or failed to disclose that: (1) Riverside faced far more financial distress than disclosed to investors; (2) as a result, there was a high likelihood that Riverside would default on its payment obligations to the Company; (3) the Company's international strategy, which relied predominantly on its exclusive agreements with Riverside to develop Six Flags-branded parks in China to drive revenue growth, was significantly less promising than represented to investors; and (4) as a result of the foregoing, Defendants' statements about the Company's business, operations and prospects lacked a reasonable basis.

28.     On October 23, 2019, Six Flags revealed that "the Chinese market remains difficult, and we are likely to continue to recognize lumpy international agreements revenue until we see progress there from a macroeconomic, real estate and trade perspective."  As a result, the Company again postponed the timing of its park openings in China, stating that "there's a very high likelihood going forward that we will see changes in the timing of park openings" and "it's unrealistic to think it's going to be exactly as we've outlined."  The Company also revealed that it had continued to suspend revenue recognition related to four of its China parks in development. In response to these disclosures, Six Flags' stock price fell from $51.23 per share to $44.88 per

share, on high trading volume, a decline of more than 12%.

29.    Then, on January 10, 2020, before the market opened, the Company revealed that the future of its China projects was in jeopardy.  In particular, the Company announced that "[t]he development of the Six Flags-branded parks in China has encountered continued challenges and has not progressed as … [the Company] had expected."  The Company also reported that Riverside "continues to face severe challenges due to the macroeconomic environment and declining real estate market in China," which caused Riverside to default on its payment obligations to Six Flags, and that the Company had delivered formal notices of default to Riverside.  Six Flags also revealed that "the eventual outcome is unknown and could range from the continuation of one or more projects to the termination of all the Six Flags-branded projects in China."  Furthermore, the Company told investors that, in the fourth quarter of 2019, it would realize no revenue from its agreements with Riverside and expected a negative $1 million revenue adjustment related to those agreements that would offset a portion of the revenue from Six Flags' other international agreements.  The Company also announced one-time charges totaling approximately $10 million related to Riverside's default.  In response to these disclosures, Six Flags' stock price fell from $43.76 per share to $35.96 per share, or nearly 18%, on high trading volume.

30.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

## LOSS CAUSATION

31.    During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market.  This artificially inflated the price of Six Flags' common stock and operated as a fraud or deceit on the Class (as defined below).  Later, when Defendants' prior misrepresentations and fraudulent

conduct were disclosed to the market, the price of Six Flags' stock fell precipitously as the prior artificial inflation came out of the price over time. As a result of their purchases of Six Flags' stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired the publicly traded common stock of Six Flags during the Class Period (the "Class"). Excluded from the Class are Defendants and their families, directors, and officers of Six Flags and their families and affiliates.

33.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. As of October 18, 2019, Six Flags had over 84 million shares of common stock outstanding, owned by hundreds or thousands of investors.

34.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     Whether Defendants violated the Exchange Act;

(b)     Whether Defendants omitted and/or misrepresented material facts;

(c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether the Individual Defendants are personally liable for the alleged misrepresentations and omissions described herein;

12

(e)     Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(f)     Whether Defendants' conduct impacted the price of Six Flags common stock;

(g)     Whether Defendants' conduct caused the members of the Class to sustain damages; and

(h)     The extent of damage sustained by Class members and the appropriate measure of damages.

35.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

36.     Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

37.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Joinder of all Class members is impracticable.

**INAPPLICABILITY OF STATUTORY SAFE HARBOR**

38.     Six Flags' "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

39.     Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of Six Flags who knew that the statement was false.  None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions

13

underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## PRESUMPTION OF RELIANCE

40.     At all relevant times, the market for Six Flags' common stock was an efficient market for the following reasons, among others:

(a)     Six Flags common stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Six Flags filed periodic public reports with the SEC and the NYSE;

(c)     Six Flags regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Six Flags was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s). Each of these reports was publicly available and entered the public marketplace.

41.     As a result of the foregoing, the market for Six Flags common stock promptly digested current information regarding Six Flags from all publicly available sources and reflected such information in the price of Six Flags common stock. Under these circumstances, all purchasers of Six Flags common stock during the Class Period suffered similar injury through their purchase of Six Flags common stock at artificially inflated prices and the presumption of reliance

applies.

42.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class' claims are grounded on Defendants' material omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding Six Flags' business and operations—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the development of Six Flags-branded parks in China through the Company's licensing agreements with Riverside to Six Flags' international strategy and the impact that could have on the Company's future revenue growth, that requirement is satisfied here.

## COUNT I

### For Violations of Section 10(b) of the Exchange Act and Rule 10b-5
### Against All Defendants

43.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Six Flags common stock at artificially inflated prices.

45.     Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which

operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Six Flags common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

46.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

47.     During the Class Period, Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

48.     Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal Six Flags' true condition from the investing public and to support the artificially inflated prices of the Company's common stock.

49.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Six Flags' common stock.  Plaintiff and the Class would not have purchased the Company's common stock at the prices they paid, or at all, had they been aware that the market prices for Six Flags' common stock had been artificially inflated by Defendants' fraudulent course of conduct.

50.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period.

51.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

52.     Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

53.     The Individual Defendants acted as controlling persons of Six Flags within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about Six Flags, the Individual Defendants had the power and ability to control the actions of Six Flags and its employees.  By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

### PRAYER FOR RELIEF

54.     WHEREFORE, Plaintiff prays for judgment as follows:

A.     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.     Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D.     Awarding such equitable/injunctive or other further relief as the Court may

deem just and proper.

## JURY DEMAND

55.     Plaintiff demands a trial by jury.

DATED: February 12, 2020                    Respectfully submitted,

                                            **McKOOL SMITH PC**

                                            */s/ Lewis T. LeClair*
                                            Lewis T. LeClair
                                            Texas Bar No. 12072500
                                            300 Crescent Court, Suite 1500
                                            Dallas, Texas 75201
                                            Tel:      (214) 978-4000
                                            Fax:      (214) 978-4044
                                            lleclair@mckoolsmith.com

                                            *Liaison Counsel for Plaintiff*

                                            **BERNSTEIN LITOWITZ BERGER**
                                            **    & GROSSMANN LLP**

                                            Hannah Ross, *pro hac vice* forthcoming
                                            Avi Josefson, *pro hac vice* forthcoming
                                            Michael D. Blatchley, *pro hac vice* forthcoming
                                            1251 Avenue of the Americas
                                            New York, NY 10020
                                            Tel:      (212) 554-1400
                                            Fax:      (212) 554-1444
                                            hannah@blbglaw.com
                                            avi@blbglaw.com
                                            michaelb@blbglaw.com

                                            *Counsel for Plaintiff*

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Michael P. Donovan, on behalf of Electrical Workers Pension Fund, Local 103, I.B.E.W. ("Local 103"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the Administrator of Local 103. I have reviewed the complaint and authorize its filing.

2. Local 103 did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. Local 103 is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. Local 103's transactions in the Six Flags Entertainment Corporation securities that are the subject of this action are set forth in the chart attached hereto.

5. Local 103 has sought to serve as a representative party on behalf of a class in the following action under the federal securities laws filed during the three-year period preceding the date of this Certification.

   *In re The Chemours Company*, No. 19-cv-1911 (D. Del.)

6. Local 103 has sought to serve as a lead plaintiff or representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification.

   *In re Wageworks, Inc., Securities Litigation*, No. 18-cv-1523 (N.D. Cal.)
   *Atanasio v. Tenaris S.A.*, No. 18-cv-7059 (E.D.N.Y.)
   *City of Warren Police & Fire Ret. Sys. v. DXC Tech. Co.*, No. 18-cv-01599 (E.D. Va.)
   *Segalis v. Molson Coors Brewing Co.*, No. 19-cv-455 (D. Col.)
   *West Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
   No. 19-cv-1323 (N.D. Ill.)
   *Emp. Retirement System of the Puerto Rico Electric Power Authority v. Conduent, Inc.*,
   No. 19-cv-8237 (D.N.J.)
   *Plymouth County Retirement System v. Evolent Health, Inc.*, No. 19-cv-1031 (E.D. Va.)

7. Local 103 will not accept any payment for serving as a representative party on behalf of the Class beyond Local 103's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this _31_ day of January, 2020.

Michael P. Donovan
Administrator
*Electrical Workers Pension Fund*
*Local 103, I.B.E.W.*

**Electrical Workers Pension Fund, Local 103, I.B.E.W.**
**Transactions in Six Flags Entertainment Corporation**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 10/29/2019 | 2,467 | 43.4484 |
| Purchase | 10/29/2019 | 1,829 | 43.5684 |
| Purchase | 10/30/2019 | 4,385 | 42.8484 |
| Purchase | 10/31/2019 | 2,321 | 42.2680 |
| Purchase | 12/2/2019 | 2,999 | 43.0606 |